# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DAVID E. KATES,

     Plaintiff,

     v.

C.O. ROBERT PACKER, et al.,

     Defendants.

CIVIL ACTION NO. 3:13-CV-01525

(CAPUTO, J.)
(SAPORITO, M.J.)

## **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights action. At the time of his alleged injury, plaintiff David E. Kates was a prisoner at USP Lewisburg, located in Union County, Pennsylvania. He is currently incarcerated at FCI McDowell, located in McDowell County, Georgia.

On June 7, 2013, the Court received and filed a *pro se* complaint against 21 separate defendants in which Kates alleged the violation of his federal constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 1; Doc. 2).[1] In the complaint, Kates alleged that, on May 24, 2012, he was severely

---

[1] Upon receipt, the Clerk docketed the complaint as two separate items, labeled as a complaint and a supporting memorandum of law. The "memorandum," however, is largely a recitation of factual allegations,

*(continued on next page)*

beaten by several correctional officers, that he was refused appropriate medical care in the days and weeks that followed his alleged beating, and that his rights were further violated in the conduct of a related disciplinary hearing, which resulted in his being sanctioned with the loss of good conduct time.

The matter now comes before the Court upon the defendants' motion to dismiss and for summary judgment (Doc. 150). That motion is fully briefed and ripe for decision. (*See* Doc. 151; Doc. 152; Doc. 172; Doc. 173; Doc. 175). In addition, we have independently reviewed the complaint for *sua sponte* dismissal pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

## I. ALLEGATIONS OF THE COMPLAINT

On May 24, 2012, at approximately 5:50 p.m., defendant corrections officer Robert Packer and defendant corrections officer Scott Buebendorf conducted a random shakedown of the cell occupied by Kates and his cellmate, Bobby Collins. Upon being returned to the cell after the

---

elaborating upon the mostly conclusory allegations of the preprinted form docketed as a "complaint." Mindful of its obligation to liberally construe the filings of *pro se* litigants, especially those who are incarcerated, these items are construed together as the plaintiff's complaint. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013).

shakedown was completed, Kates found his personal items had been thrown on the floor and some items were missing. Kates complained to the range officer, defendant corrections officer D. Eroh Jr.

Apparently dissatisfied with Eroh's response, Kates covered the cell window with paper. When Eroh made his next round and found the cell window covered, he knocked on the door to ask if Kates and Collins were okay. Kates requested to speak with a lieutenant about his missing property. Ten minutes later, defendant Lieutenant Steve Booth arrived and Kates expressed his grievance to him and removed the paper from the window.

Apparently dissatisfied with Booth's response, Kates covered the cell window again about one hour later. Defendant Lieutenant Justin Foura arrived and advised Kates that if he kept blocking the window, next time he would "gas" Kates.

At approximately 10:00 p.m. that night, after a shift change, Kates blocked the window yet again. After Kates complied with instructions to remove the paper from the window, defendant Lieutenant Chad Brandt ordered the cell's food slot opened and pepper spray was sprayed into the cell. After the pepper spray was administered, Kates and Collins

submitted to the officers' directions to "cuff up." When Kates stuck his hands through the food slot to be cuffed, defendant Packer "immediately slammed [Kates's] hands and fingers in the slot." Packer then placed rapid restraint cuffs on Kates "extremely tight [and] then slammed [his] wrist in the slot for about 3 to 5 seconds before releasing" Kates's wrists from the slot. Packer then cuffed Collins through the door slot.

Upon exiting the cell, Kates was grabbed by three corrections officers—defendants Gwynn Wise, Jeffery Stroud, and Jason Wagner— each holding one of the inmate's arms or his head and escorting him off the "range" where his cell was located. The officer holding Kates's head "was intentionally squeezing [Kates's] neck and throat area, making it hard for [Kates] to breath[e]." When Kates complained, defendant Booth told him to "shut the fuck up nigger."

Kates was escorted off the range to an area outside the view of security cameras, where he was slammed to the ground by one of the escorting corrections officers, who then yelled "stop resisting" and began punching and kicking Kates. Other officers joined in the assault while Kates curled up into a fetal position. After some period of time, he was picked up by the cuffs and taken to a shower room, where he was held

until two handheld camera operators arrived. While waiting, Kates alleges that the officers restraining him twisted and bent his wrists and a thumb.

Sometime after the camera operators arrived, defendant Nurse A. Hicks arrived to examine Kates. He complained to her that he thought his wrist was broken, his ribs were hurting, and his right temple hurt. Hicks examined his wrist closely, looked over the rest of his body, then left the shower area so officers could begin the decontamination process.

Kates was showered, his wet clothes removed, and he was dressed in a set of paper clothes. During this process, Kates suffered a laceration to his right wrist, which bled profusely. Kates suggests that he may have been surreptitiously cut by one of the officers with a razor or some other sharp implement. Nurse Hicks was called back into the shower room, where she examined Kates again. At her advice, Kates was then transported by stretcher to the infirmary, where he was cleaned up and treated with Dermabond stitches. He was then escorted to a cell and left in ambulatory restraints for the night.

Kates claims that he was then denied medical care for a period of 57 days, despite suffering various undocumented injuries. He claims that Nurse Hicks falsified her medical evaluation form, stating that Kates

complained of no injuries other than the laceration. He claims that Packer falsified an incident report in which he stated that Kates bit his finger, and he claims that various other defendant corrections officers falsified statements in which they described seeing Kates bite Packer and resist the effort to escort him out of his cell for decontamination.

Kates has submitted a copy of a July 20, 2012, disciplinary hearing officer report as an attachment to his complaint. (Doc. 2-2, at 12–17). He claims that this report was fabricated and based on evidence that the disciplinary hearing officer ("DHO"), defendant Angelo Jordan, knew to be false. At the hearing, Kates denied having bitten Packer and disputed other facts set forth in the incident report charging him with assault. The DHO considered written eyewitness statements by Brandt, Stroud, Wise, Wagner, and defendant corrections officer Charles Anderson, describing how Kates became combative and bit Packer's finger, and how the officers used the least amount of force necessary to regain control. The DHO considered a medical report and photograph documenting Packer's injury, as well as the medical report by Nurse Hicks and a photograph documenting Kates's medical status after the incident. At Kates's request, the DHO reviewed security camera video footage of the incident. The DHO

also considered Kates's written statement. (*Id.* at 13–16).

Ultimately, the DHO weighed all of this evidence and made the following findings of fact:

> The DHO gives greater weight to the reporting officer's written statement that you assaulted him by biting him in the right pinky finger, than to your claim that the [incident] report is completely false. This is based on the fact the reporting officers was very specific concerning your assault on him[.] Numerous staff eyewitnesses submitted corroborating written testimony you assaulted the reporting officer when you bit his right pinky finger; the staff injury assessment and associated photograph of the reporting officer's injury documents you did bite him in his right pinky finger[.] The DHO concedes to your claim you were not finally escorted down the range by the reporting officer. Evidence exists you were initially being escorted by the reporting officer. You were informed by the DHO he considered the supporting memorandum from officer J. Stroud, which he used as the greater weight of the evidence to support you did bite the officer. Officer. Officer Stroud stated, in part, responding staff were escorting you to the shower to be medically assessed and decontaminated at which time you became combative. Staff placed you on the ground using the least amount of force necessary. You bit officer Packer on the finger. He then relieved Packer of his duties who was controlling your head. The greater weight of the evidence suggests officer Packer was originally controlling your head at which time you bit his finger. Officer Packer was relieved by officer Stroud and officer Stroud was the officer who then controlled your head and escorted you down the range after you bit officer Packer[.] The DHO considered your claim that video documentation would reveal that the reporting officer falsified the incident report to be completely without merit. The DHO

discussed with you the aforementioned video documentation reveals evidence which suggests you did assault the reporting officer by biting him in the right pinky finger. Specifically, video documentation, which you requested to be reviewed[,] revealed you[] and your cellmate . . . were observed struggling with staff after you each bit staff members' fingers. While you were being escorted down the range after your assault on the reporting officer, he was observed looking down at his injured hand, while walking next to you, after you bit him in the right pinky finger. The reporting officer then became angry and scolded you, as you were being escorted by officer Stroud and other staff. No evidence was discovered to support your claim the officer threatened you. The greater weight of the evidence supports the reporting officer visually addressed his injured right pinky finger after you bit him, then he was observed becoming angry and scolded you after you bit him in the right pinky finger . . . .

Accordingly, the DHO finds the greater weight of the evidence to include specific evidence in . . . the incident report that you assaulted the reporting officer by biting him [in] the right pinky finger, corroborating information by numerous staff members that supports the specific evidence in . . . the incident report which provided eyewitness testimony that you assaulted the reporting officer by biting him in the right pinky finger, a corroborating staff injury assessment and associated photograph which documents that the reporting officer received an injury to his right pinky finger after you bit him, and video evidence[,] . . . which you requested[,] which provides information which lends credibility that you did bite the reporting officer, the DHO finds you violated code 224, Assaulting any person, of the Inmate Discipline Policy.

(*Id.* at 16–17). The DHO imposed the following sanctions: disallowance of

27 days of good conduct time, 30 days disciplinary segregation, and five months loss of commissary, telephone, and visiting privileges. (*Id.* at 17).

Kates has not alleged that this disciplinary conviction has been reversed or otherwise invalidated.[2]

## II. STANDARDS OF REVIEW

### A. Rule 12(b)6 Dismissal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not

---

[2] *See generally Avery v. Nicol*, 208 F.3d 212, 2000 WL 282903, at *2 (6th Cir. 2000) (unpublished table decision) ("The plaintiff bears the burden of showing that his claims are not barred by *Heck*."); *Bronowicz v. Allegheny County*, 2013 WL 5724520, at *12 (W.D. Pa. Oct. 21, 2013) ("[U]nder *Heck*, it is Plaintiff's burden to plead and prove that he achieved a 'favorable termination . . . .'").

compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 322 (2007).[3]

## B. *Sua Sponte* Dismissal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions concerning prison conditions. *See* 42 U.S.C. § 1997e(c)(1). *See generally Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner

---

[3] In addition to the complaint itself (Doc. 1; Doc. 2), we have considered documents attached to and incorporated into the complaint by reference, including medical records and documentation of the disciplinary proceedings against Kates. (Doc. 2-1; Doc. 2-2; Doc. 2-3; Doc. 2-4). We have also considered various BOP program statements that are matters of public record of which the Court may properly take judicial notice in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Evid. 201; *Leonhauser v. Long*, 2012 WL 398642, at *3 n.2 (M.D. Pa. Jan. 4, 2012); *see also Antonelli v. Ralston*, 609 F.2d 340, 341 n.1 (8th Cir. 1979); *Gleave v. Graham*, 954 F. Supp. 599, 605 (W.D.N.Y. 1997). Because dismissal of this action is recommended based on the allegations that appear on the face of the complaint, documents attached to or incorporated into the complaint by reference, and matters of which the Court may take judicial notice, it is unnecessary to consider the defendants' alternative request for summary judgment.

litigation screening procedures and standards). "The court's obligation to dismiss a complaint under [these] screening provisions is not excused even after defendants have filed a motion to dismiss." *Id.* at 589. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

## III. DISCUSSION

Kates has advanced three *Bivens* claims: (1) a claim that his Eighth Amendment right to be free from cruel and unusual punishment was violated by the use of excessive force against him on May 24, 2012; (2) a claim that his Fifth Amendment due process rights were violated in connection with related disciplinary hearing proceedings where he was sanctioned for assaulting a corrections officer; and (3) a claim that his Eighth Amendment right to be free from cruel and unusual punishment was violated by certain defendants' deliberate indifference to his serious medical needs. He also alleges the violation of various federal criminal statutes, federal prison regulations, and BOP program statements. He seeks declaratory and injunctive relief, as well as compensatory and

punitive damages. The defendants have moved to dismiss all of Kates's claims for failure to state a claim, and they have moved in the alternative for summary judgment.

### A. Claims for Declaratory and Injunctive Relief

As a preliminary matter, the Court must consider whether Kates's claims for declaratory and injunctive relief are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). In his complaint, Kates seeks a declaration by this Court that the defendants' conduct violated his constitutional rights, and an injunction ordering them to stop assaulting inmates, particularly in areas of the prison not monitored by video cameras. (Doc. 1, at 13).

A prisoner's transfer from the prison complained of generally moots his claims for prospective injunctive or declaratory relief. *Sutton*, 323 F.3d at 248; *Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981). Such claims are not mooted when "a challenged action is (1) too short in duration to be fully litigated prior to its cessation or expiration; and (2) there is a

reasonable likelihood that the same complaining party would be subjected to the same action again." *Sutton*, 323 F.3d at 248 (alteration and internal quotation marks omitted). A prisoner's claim for damages is not mooted by a transfer. *Sutton*, 323 F.3d at 249; *Allah v. Seiverling*, 229 F.3d 220, 222 n.2 (3d Cir. 2000); *Weaver*, 650 F.2d at 27 n.13.

At the time of the events giving rise to this action, Kates was incarcerated at USP Lewisburg, located in Union County, Pennsylvania. On October 30, 2014, the Court received and docketed a letter from Kates advising that he had been transferred to USP Allenwood, a federal prison facility located elsewhere in Union County, Pennsylvania. (Doc. 117). On March 31, 2015, the Court received and docketed a letter from a paralegal at a non-profit prisoner rights organization advising that Kates had been transferred to FTC Oklahoma City, a federal prison facility located in Oklahoma County, Oklahoma. (Doc. 163). On April 6, 2015, the Court received and docketed a letter from the same paralegal advising that Kates had been transferred to FCI McDowell, a federal prison facility located in McDowell County, Georgia. (Doc. 165). Each of the defendants appears to be resident at USP Lewisburg; as a result, Kates's claims for declaratory and injunctive relief are clearly moot.

Accordingly, it is recommended that the Court *sua sponte* dismiss Kates's claims for declaratory and injunctive relief.

## B. Claimed Violations of Federal Criminal Statutes

In his complaint and motion papers, Kates claims that each of the defendants is liable under one or more federal criminal statutes: 18 U.S.C. § 241 (conspiracy to deprive civil rights); 18 U.S.C. § 242 (deprivation of civil rights); 18 U.S.C. § 371 (conspiracy to defraud the United States); and 18 U.S.C. § 1001 (false or fraudulent statements to a federal agency).[4] None of these statutes imposing criminal liability for deprivations of civil liberties and making false or fraudulent statements to the federal government gives rise to a private cause of action. *See Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137–38 (4th Cir. 1987) (§ 1001);

---

[4] Kates also briefly references violations of 18 U.S.C. § 2 (imposing principal liability for aiding and abetting), 18 U.S.C. § 111 (assault on federal officers and employees) and 18 U.S.C. § 112 (assault on foreign officials). He is not, however, a federal officer or employee, nor is he a foreign official. Moreover, there is no private cause of action under any of these criminal statutes. *See Mashak v. Minnesota*, Civil No. 11-473, 2012 WL 928225, at *34 (D. Minn. Jan. 25, 2012) (§ 111); *Salazar v. Burresch*, 47 F. Supp. 2d 1105, 1114–15 (C.D. Cal. 1999) (§ 112); *Lamont v. Haig*, 539 F. Supp. 552, 558 (D.S.D. 1982) (§ 2). Although Kates does not cite 18 U.S.C. § 113 (assault within the special maritime and territorial jurisdiction of the United States), we note that this statute likewise does not give rise to a private cause of action. *See Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996).

*Manning v. Haggerty*, No. 3:11cv302, 2011 WL 4527818, at *4 (M.D. Pa. Sept. 28, 2011) (§ 371); *Abou-Hussein v. Gates*, 657 F. Supp. 2d 77, 81 (D.D.C. 2009) (§§ 241 & 1001), *aff'd*, 2010 WL 2574084 (D.C. Cir. June 11, 2010) (per curiam); *Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del. 2009) (§§ 241 & 242), *aff'd*, 350 Fed. App'x 605 (3d Cir. 2009) (per curiam); *Rockefeller v. U.S. Court of Appeals*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (§§ 242 & 371); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (§§ 241, 242, & 371). Moreover, violations of these criminal statutes are not cognizable under *Bivens*, which affords only "a private cause of action to recover damages against a federal agent for violations of *constitutional* rights." *Lora-Pena v. F.B.I.*, 529 F.3d 503, 505 n.1 (3d Cir. 2008) (per curiam) (emphasis added).

Accordingly, it is recommended that the Court *sua sponte* dismiss Kates's claims for damages under federal criminal statutes, including 18 U.S.C. §§ 241, 242, 371, and 1001.

## C. Claimed Violations of Prison Regulations and Policies

Kates also claims that the defendants have violated various federal prison regulations and BOP program statements, including: (a) P.S. 5566.06 and 28 C.F.R. §§ 552.21, .22, and .23, setting forth BOP policies

and procedures with respect to the use of force against prisoners; (b) P.S. 5521.06, establishing procedures and criteria for inmate cell searches; (c) P.S. 3420.09, establishing ethical standards for BOP employees (*e.g.*, a duty to report misconduct by other BOP employees); (d) P.S. 5500.13, purportedly establishing standards for the supervision of subordinate prison staff; and (e) P.S. 6010.05, establishing policies and procedures for the provision of medical services. But even if the defendants did violate federal prison regulations or BOP program statements, such violations do not themselves give rise to a private cause of action. *See Bullard v. Scism*, 449 Fed. App'x 232, 235 (3d Cir. 2011) (per curiam) ("[E]ven if the [BOP's] regulation were violated, its violation is not actionable."); *see also Reeb v. Thomas*, 636 F.3d 1224, 1227–28 (9th Cir. 2011) ("[N]oncompliance with a BOP program statement is not a violation of federal law."); *Faircloth v. Schwartz*, 2014 WL 4466663, at *21 (D. Colo. Sept. 10, 2014) ("[Because] administrative regulations cannot create private causes of action outside the scope of substantive rights . . . [an inmate] has no right to enforce prison regulations through a private legal action, except to the extent that those regulations implicate constitutional rights.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 289–93 (2001)); *Joost v. Cornell Corr., Inc.*, No.

97-512T, 1998 WL 939531, at *7 (D.R.I. Dec. 11, 1998) ("[F]ederal prison regulations and Bureau of Prisons program statements . . . neither expressly nor impliedly confer a private right of action upon prisoners."). Nor does the mere violation of a federal prison regulation or BOP program statement rise to the level of constitutional significance necessary to be cognizable under *Bivens*. *See Thompson v. Sadowski*, Civ. Action No. 9:09-CV-00685, 2011 WL 7640125, at *9 n.9 (N.D.N.Y. Aug. 16, 2011); *McDonald v. United States*, Civil Action No. 2:07cv82, 2008 WL 4615017, at *4 (N.D.W. Va. Oct. 14, 2008).

Accordingly, it is recommended that the Court *sua sponte* dismiss Kates's claims for damages under federal prison regulations and BOP program statements, including 28 C.F.R. §§ 552.21–.23, P.S. 3420.09, P.S. 5500.13, P.S. 5521.06, P.S. 5566.06, and P.S. 6010.05.

### D. Eighth Amendment Denial of Medical Care Claims

In his complaint, Kates has alleged the following injuries as a result of the May 24, 2012, incident: a three-centimeter bleeding laceration to his right wrist, which was treated with Dermabond stitches; a 1½-centimeter abrasion to his right knee, which was treated with an adhesive bandage and a packet of bacitracin ointment; a swollen temple and a "possible"

concussion;[5] a "possibly" fractured right wrist;[6] a fractured finger on his right hand; and bruising to his ribs, his thigh, his neck and his back. Kates has further alleged that he made daily requests for a medical examination and x-rays of his injuries over a 57-day period, and on all but a few occasions his requests were denied by medical staff. His requests to have his injuries x-rayed were repeatedly and categorically denied.

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and (2) "a sufficiently culpable state of mind" of the defendant official. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). There are different standards for Eighth Amendment violations depending on the type of claim. An Eighth Amendment challenge to prison conditions is subject to the deliberate indifference standard. *See id.* at 835–36. Prison officials are deliberately indifferent when they know of and disregard a substantial risk of harm to a prisoner. *Id.* at 836. Moreover, a

---

[5] Although Kates alludes to a "possible" concussion, he does not allege any concrete symptoms to suggest that he suffered from one.

[6] Again, Kates has failed to allege facts to support this conjecture.

prisoner must produce evidence of serious or significant physical or emotional injury resulting from the challenged prison condition. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

The Eighth Amendment's prohibition of "unnecessary and wanton infliction of pain" includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In this context, "to establish a violation of [an inmate's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (2003).

With respect to the first prong of the *Estelle* standard, a serious medical need exists if failure to treat such condition would constitute a "denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 824, 825 (1994).

> [T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious

> that a lay person would easily recognize the necessity for
> a doctor's attention."

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting

*Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326,

347 (3d Cir. 1987)).

With respect to the second, deliberate indifference prong of the

*Estelle* standard, prison medical authorities are given considerable

latitude in the diagnosis and treatment of inmate patients. *Inmates of*

*Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Thus,

"[m]ere medical malpractice, negligence, and courses of treatment

inconsistent with the desires of the prisoner . . . do not constitute

deliberate indifference to serious medical needs." *Lopez v. Corr. Med.*

*Servs., Inc.*, 499 Fed. App'x 142, 146 (3d Cir. 2012). Instead, the evidence

must show that the defendant "knows of a prisoner's need for medical

treatment but intentionally refuses to provide it, delays necessary medical

treatment for a non-medical reason, or prevents a prisoner from receiving

needed medical treatment." *Id.* at 146.

Here, Kates has failed to allege a serious medical need. Medical staff

diagnosed and treated a small laceration to his wrist with Dermabond

stitches, and a small abrasion on his knee with an adhesive bandage and

bacitracin ointment. He complained of bruised ribs and a swollen temple, and medical staff provided him with prescription-strength ibuprofen. These minor injuries do not, as a matter of law, constitute serious medical needs. *See, e.g.*, *Brandner v. First Corr. Med.*, 167 Fed. App'x 328, 329 (3d Cir. 2006) (per curiam) (swollen and sore knee treated with ibuprofen); *Brown v. Rodarmel*, No. 3:CV–10–293, 2013 WL 1249023, at *11 (M.D.Pa. Mar. 27, 2013) (finding minor cuts, loosened tooth, and head, shoulder and back pain nothing more than "temporary discomfort"); *Caldwell v. Luzerne County Corr. Facility Mgmt. Employees*, 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) (neck and shoulder pain treated with ibuprofen); *Joyce v. Hanney*, Case No. 3:05cv1477, 2009 WL 563633, at *4 (D. Conn. Mar. 4, 2009) (minor abrasion plus laceration treated with Dermabond). Other than these minor injuries, he has failed to allege any injuries that, if untreated, "can be expected to lead to substantial and unnecessary suffering, injury, or death," that were "diagnosed by a physician as requiring treatment," or that are "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *See Colburn*, 946 F.2d at 1023; *see also Stroud v. Boorstein*, Civil Action No. 10-3355, 2014 WL 2115499, at *9 (E.D. Pa. May 20, 2014) ("mild discomfort as a result of . . .

bruising, bleeding, and head pain"); *Royster v. Beard*, No. 09–1150, 2013 WL 4786028 (W.D.Pa. Sept. 6, 2013) (loss of consciousness, excessive bruising, bleeding, and swelling); *Despaigne v. Crolew*, 89 F. Supp. 2d 582, 585 (E.D. Pa. 2000) (visible swelling and bruising without significant or permanent effects); *Rivera v. Johnson*, No. 95-CV-0845E(H), 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection."); *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (noting that mild concussion, broken jaw, and broken finger are not serious medical needs).

Moreover, Kates has failed to allege any acts or omissions that indicate deliberate indifference by prison medical staff. In his complaint, Kates acknowledged that he was examined and treated by defendant Nurse Hicks immediately following the May 24, 2012, incident. (Doc. 2, at 8–9; *see also* Doc. 2-3, at 1). He has also acknowledged that he was examined and treated by a non-party physician assistant, P.A. Fasciana, the next day, and that he was later given ibuprofen for his pain. (Doc. 2, at 11; *see also* Doc. 2-3, at 1–2). His primary complaint appears to be that

prison medical staff refused to authorize x-rays to definitively confirm whether his injuries included any broken bones. A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Lanzaro*, 834 F.2d at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Indeed, as the Supreme Court of the United States has expressly recognized, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and thus "[a] medical decision not to order an X-ray . . . does not represent cruel and unusual punishment," but rather, "[a]t most it is medical malpractice." *Estelle*, 429 U.S. at 107. The key question is whether the defendant has provided the inmate with some type of medical treatment, regardless of whether it is what the inmate desires. *Farmer*, 685 F. Supp. at 1339. Kates did receive timely medical treatment; he is simply dissatisfied with the prescribed course of treatment prescribed.

Accordingly, it is recommended that Kates's Eighth Amendment damages claim for the alleged denial of medical care be dismissed for failure to state a claim.

### E. Excessive Force and Due Process Claims

In his complaint, Kates has alleged the use of excessive force against him by several of the defendants on May 24, 2012. He has further alleged that several other defendants were present but failed to intervene to protect him, and that some of these defendants who were present assisted indirectly (e.g., by closing cell door food tray slots so other inmates could not see the incident). All of these defendants, he has alleged, then prepared false written statements regarding the incident, accusing Kates of biting a corrections officer, upon which subsequent disciplinary proceedings were based. Following a disciplinary hearing, the DHO found Kates guilty of assaulting the corrections officer and imposed sanctions, including a loss of good conduct time. Kates asserts that these events violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fifth Amendment right to due process. The defendants have moved to dismiss these claims on the ground that they are barred by the favorable termination rule enunciated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), and subsequently extended to the prison disciplinary context in *Edwards v. Balisok*, 520 U.S. 641 (1997).

In *Heck*, the Supreme Court of the United States held that, where judgment in favor of a plaintiff in a § 1983 action would necessarily imply the invalidity of the plaintiff's conviction or sentence, the plaintiff must first demonstrate "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. Soon after, the Court extended *Heck*'s favorable termination rule to prison disciplinary sanctions, holding that a prisoner cannot bring a § 1983 action where the success of that suit would "necessarily imply the invalidity of the deprivation of his good-time credits." *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997). Later, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reaffirmed the favorable termination rule and broadened it to encompass equitable remedies as well, holding that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter what the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82

(emphasis in original). Although *Heck* and its progeny involved § 1983 actions by state prisoners, their reasoning applies equally to *Bivens* actions as well. *Lora-Pena*, 529 F.3d at 505 n.2. In the *Bivens* context, "the proper avenue of relief is a federal habeas corpus petition pursuant to 28 U.S.C. § 2241 to challenge the duration of the sentence." *Schreane v. Seana*, 506 Fed. App'x 120, 123 (3d Cir. 2012) (per curiam).

In his Eighth Amendment excessive force claim, Kates contends that several of the defendants used excessive force against him in connection with the May 24, 2009, incident. That incident, however, was the subject of a subsequent disciplinary proceeding. Kates contends that the disciplinary proceeding itself was constitutionally infirm. He claims that his disciplinary conviction was based on false statements by Nurse Hicks and each of the correctional officer defendants. In particular, Kates claims that he did not bite defendant Packer, that Packer and the other corrections officers who claimed to have witnessed the incident conspired to fabricate the disciplinary charge and to submit false statements to support it, and that Nurse Hicks falsified medical records by omitting an accurate description of the injuries Kates suffered during the incident. Kates further claims that the DHO was a co-conspirator, accepting and relying

on these false statements with knowledge that they were false, and recording a fabricated description of what he observed when he reviewed security camera video footage.

Kates's challenge to the disciplinary conviction itself is clearly barred by *Heck* and *Edwards*—a ruling that Kates's due process rights were violated would necessarily imply the invalidity of the loss of good conduct time imposed as a disciplinary sanction. *See Edwards*, 520 U.S. at 646–48; *Razzoli v. Director, Bureau of Prisons*, 293 Fed. App'x 852, 857 (3d Cir. 2008); *Schreane*, 506 Fed. App'x at 123; *Hart v. Whalen*, No. 3:08-CV-00828, 2009 WL 5173487, at *7 (M.D. Pa. Dec. 22, 2009). His claim that the defendants used excessive force during the same underlying incident is likewise barred, as a ruling in Kates's favor would of necessity contradict the factual basis for the disciplinary conviction, which in turn would necessarily imply the invalidity of the deprivation of good time credits as a disciplinary sanction. *See Burke v. Bittenbender*, No. 4:CV-10-0057, 2010 WL 4681117, at *2 (M.D. Pa. Nov. 10, 2010).

Accordingly, it is recommended that Kates's Eighth Amendment damages claim for the use of excessive force and his Fifth Amendment damages claim for the deprivation of due process be dismissed for failure

to state a claim without prejudice to the filing of a federal habeas corpus petition pursuant to 28 U.S.C. § 2241. *See Schreane*, 506 Fed. App'x at 123.

## F. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Based on the detailed allegations of the complaint and the various documents attached to and incorporated by reference into the complaint, it is clear that amendment would be futile. It is therefore recommended that this action be dismissed without leave to amend.

## IV.   PLRA "THREE STRIKES" WARNING

The plaintiff is hereby notified that a prisoner may not bring a civil action or appeal a civil judgment under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If this recommended disposition is adopted by the presiding United

States District Judge, the dismissal of this action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1) may constitute a "strike" under 28 U.S.C. § 1915(g), and the accumulation of additional strikes may bar the plaintiff from proceeding *in forma pauperis* in later cases absent a showing of imminent danger. *See generally Byrd v. Shannon*, 715 F.3d 117, 126 (3d Cir. 2013) (articulating Third Circuit standard for application of § 1915(g) "three strikes" rule).

## V.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The defendants' motion to dismiss and for summary judgment (Doc. 150) be **GRANTED in part** to the extent it seeks dismissal of the complaint under Fed. R. Civ. P. 12(b)(6) and **DENIED in part as MOOT** to the extent it seeks summary judgment under Fed. R. Civ. P. 56;

2.    The plaintiff's claims for prospective declaratory or injunctive relief be **DISMISSED** as **MOOT**;

3.    The plaintiff's claims under federal criminal statutes, federal prison regulations, and BOP program statements be **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915A(b) and 42 U.S.C.

§ 1997e(c);

4.     The plaintiff's Eighth Amendment denial-of-medical-care claim be **DISMISSED** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

5.     The plaintiff's Eighth Amendment excessive-force and Fifth Amendment due-process claims be **DISMISSED** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), **without prejudice** to the filing of a federal habeas corpus petition pursuant to 28 U.S.C. § 2241; and

6.     The Clerk be directed to mark this case as **CLOSED**.

**Dated: August 25, 2015**                    *s/ Joseph F. Saporito, Jr.*
                                              **JOSEPH F. SAPORITO, JR.**
                                              **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID E. KATES, | |
| Plaintiff, | CIVIL ACTION NO. 3:13-CV-01525 |
| v. | (CAPUTO, J.) |
| | (SAPORITO, M.J.) |
| C.O. ROBERT PACKER, et al., | |
| Defendants. | |

## **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated August 25, 2015. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: August 25, 2015      *s/ Joseph F. Saporito, Jr.*
                                       **JOSEPH F. SAPORITO, JR.**
                                       **United States Magistrate Judge**