**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DAVID E. KATES,

      Plaintiff,

         v.

C.O. ROBERT PACKER, *et. al*

      Defendants.

CIVIL ACTION NO. 3:13-CV-1525
(JUDGE CAPUTO)
(MAGISTRATE JUDGE SAPORITO)

<u>**MEMORANDUM**</u>

Presently before me is Magistrate Judge Joseph F. Saporito, Jr.'s Report and Recommendation ("R & R"). (Doc. 179) Magistrate Judge Saporito recommends that Plaintiff David E. Kates's ("Kates") *pro se* prisoner civil rights action be dismissed for failure to state a claim upon which relief can be granted and deny leave to amend based on futility. (*Id*.) Kates filed timely objections to Magistrate Judge Saporito's R & R asking that I reject Magistrate Judge Saporito's recommendation regarding certain claims or, in the alternative, permit him leave to amend. For the reasons that follow, I will adopt in part and reject in part the recommendations of Magistrate Judge Saporito and remand the matter to Magistrate Judge Saporito for further proceedings.

## A.  Background

Magistrate Judge Saporito's R & R sets forth more fully the relevant factual background. For purposes of this Memorandum, the background is as follows:

On June 7, 2013, Kates filed a *pro se* prisoner civil rights action, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), against twenty (20) defendants, alleging that his federal constitutional rights were violated. (Docs. 1-2)[1]  Kates alleges he was injured on May 24, 2012 and continuing thereafter, while

---

[1]

      Kates filed a complaint (Doc. 1) and a supporting "memorandum of law" (Doc. 2). However, Magistrate Judge Saporito construed both documents as Kates's complaint

incarcerated at USP Lewisburg, in Union County, Pennsylvania. (Doc. 179, 1.)

The following facts are taken from Kates's complaint (Docs. 1-2.):[2]

On May 24, 2012, Defendants Packer and Buebendorf came to Kates's and his cell mate's cell for a random "shakedown" or normal prison cell search. (Doc. 2, 1, ¶ 3.)  The cell was searched for about ten to fifteen minutes. (*Id.*) Kates and his cell mate were then returned to the cell where Kates's personal items were found to have been dumped on the floor. (*Id.*) Kates also noticed that some of his personal items and legal papers were missing.  (*Id.*) When range officer, Defendant Eroh, was making his rounds, Kates explained to him what had happened. (*Id.* at ¶ 4.) Kates wrote down what was missing and asked to speak to a superior or a Lieutenant. (*Id.*) Kates then blocked his cell window with paper so that Defendant Eroh could not see inside his cell when he again made his rounds.  (*Id.* at ¶ 5.) Defendant Eroh knocked on the door to ask if Kates and his cell mate were alright and Kates again gave him a request to speak to a Lieutenant.  (*Id.*) Defendant Booth came to the cell about ten minutes later and asked what the problem was.  (*Id.*) Kates explained what happened and Defendant Booth stated that Defendant Packer had taken extra prison clothes only and denied taking any of Kates's personal property.  (*Id.*) Defendant Booth walked off. (*Id.*) About an hour later, Kates again blocked the window.  (*Id.*) Defendant Foura came to the door and stated that if Kates keeps blocking the window, the next time Foura had to return, "he would gas" Kates.  (*Id.*)

At approximately 9:50 pm, around shift change, Kates again blocked his cell window. (*Id.* at ¶ 7.) Officers notified Lieutenants, who then also arrived.  (*Id.*) Kates was ordered to unblock the window and he complied.  (*Id.*) Defendant Brandt ordered that the food slot be

---

pursuant to the obligation to construe the filings of *pro se* litigant liberally and because the "memorandum of law" largely elaborated on the allegations contained in the preprinted complaint. (*See R & R.*, Doc. 179, 1 n.1.)

[2]

Because Magistrate Judge Saporito recommends dismissal of Kates's complaint *sua sponte* and pursuant to Rule 12(b)(6), Defendants' Statement of Material Facts (Doc. 120) and Kates's answer (Doc. 137.), were not considered. Therefore, I will not consider such.

opened and then sprayed MK-9 gas into the cell. (*Id.*) Kates and his cell mate then attempted to "cuff-up", with Kates going first. (*Id.* at ¶ 10.) Kates stuck his hand and wrist through the food slot and Defendant Packer slammed his hands and fingers in the slot. (*Id.*) Kates jerked back because of pain but put his hands back when ordered. (*Id.*) Defendant Packer then put cuffs on Kates "extremely tight" and slammed his wrist in the food slot for about three to five seconds before releasing the slot door off his wrist. (*Id.*)

Once Kates came out of his cell, he was immediately grabbed by Defendants Wise, Stroud and Wagner. (*Id.* at ¶ 11.) One had hold of Kates's neck, while the other two had each arm. (*Id.*) The officer controlling Kates's head and neck was squeezing his neck and throat, making it hard for Kates to breathe so he stated two or three times "you are squeezing my neck." (*Id.* at ¶ 12.) Defendant Booth then stopped the officers, walked to the side of Kates, and said "shut the fuck up nigger." (*Id.*)

After Kates's was off the range, outside of camera view, one of the officers holding his arm tried to trip Kates, but when unsuccessful, he slammed Kates to the ground and yelled "stop resisting." (*Id.* at ¶ 14.) The officer then began punching and kicking Kates while other officers joined in. (*Id.*) All Kates could do was ball-up in a fetal position while he was punched, kicked and stomped in the ribs, legs, back, head and face, for what felt like a few minutes. (*Id.* at ¶ 15.) Kates was then aggressively picked up by the cuffs and taken to the shower area where he was left for over twenty minutes while the two officers holding his arms were twisting and bending his wrists. (*Id.*) The officer holding his left arm began to ease up but the officer holding the right arm kept bending and twisting his arm and started bending his thumb backwards. (*Id.*) None of this was captured on videotape. (*Id.*)

Defendant Campbell or Defendant Mattern then came into the shower area and stated that the camera will be shut off in ten seconds. (*Id.* at ¶ 17.) Defendant Hicks and Defendant Brandt then arrived. (*Id.* at ¶ 18.) Defendant Hicks, a nurse, came to examine Kates and he told her that "his wrist is broke, [his] ribs are hurting, and [his] right temple." (*Id.*) Defendant Hicks looked at his wrist closely, touched it, and glanced over other parts of his body before

3

exiting the shower area. (*Id.*) Defendant Brandt then ordered the other officers to begin the contamination process. (*Id.*) Kates was placed in the shower, his wet clothes were removed and he was placed in paper clothes. (*Id.*) During the shower, Kates's wrist started bleeding uncontrollably.[3] (*Id.*) Seeing all the blood, Defendant Brandt called Defendant Hicks to return. (*Id.*) When she arrived, she instructed that the cut needed outside help and Kates was placed on a stretcher and taken to the downstairs medical room to be cleaned up and given dermabond stitches. (*Id.*) Kates was then escorted back to the first floor and placed in ambulatory restraints for the night. (*Id.*)

As a result of the May 24, 2012 incident, Kates "suffered numerous injuries, loss [sic] a significant amount of blood and was denied medical attention for over 57 straight days." (*Id.* at ¶ 22.) Kates's injuries include "a swollen left temple, possible concussion, bruised ribs, thigh bruised, cut knee, right and left wrist injuries, with the right wrist being possibly fractured also right finger fractured and neck and back bruises." (*Id.* at ¶ 23.) Kates was never treated for any of the injuries other than being given a bandaid and ointment for the cut on his knee. (*Id.* at ¶ 23.)

Attached as an exhibit to Kates's complaint is the report of Disciplinary Hearing Officer ("DHO"), Defendant Jordan (Doc. 2-2, 12-17.)   Kates was charged with "assaulting any person" after the May 24, 2012 incident based on staff allegations that he bit Defendant Packer on the pinky finger. (Doc. 2-2, 12.) Defendant Jordan conducted hearings on July 2, 2012 and July 9, 2012. (Doc. 1, 4; Doc. 2 at ¶ 31.) Kates was found to have committed the act. (*Id.* at 14.) As a result, Kates was disallowed twenty-seven days of good conduct time, was subject to thirty days disciplinary segregation and loss of five months of commissary, telephone and visiting privileges.  (*Id.* at 17.) Kates does not allege that he appealed the DHO's determination.

---

[3]

Kates feels that he was intentionally cut by one of the officers "with a razor or some sharp object," but Kates allegation is no more than speculation and provides no facts to support such. (Doc. 2, ¶ 19.)

4

Magistrate Judge Saporito states Kates's allegations as follows: violations of his Eighth Amendment rights to be free from cruel and unusual punishment through use of excessive force and through deliberate indifference to his serious medical needs, and violation of his Fifth Amendment due process rights. Kates requests a declaratory judgment stating that his rights under the Constitution and laws of the United States were violated (Doc. 1, 13.); preliminary and permanent injunctions against all defendants ordering them to stop assaulting inmates, especially in areas without video recording (*Id.*); and compensatory and punitive damages (*Id.*).

Defendants filed a motion to dismiss and for summary judgment. (Doc. 150)[4] On August 25, 2015, Magistrate Judge Saporito filed the instant R & R. Kates filed timely objections on September 8, 2015. (Doc. 180) Defendants filed a response on September 22, 2015. (Doc. 181) Magistrate Judge Saporito's R & R and Kates's objections thereto are ripe for disposition.

## B.  Legal Standards

### 1.  Report and Recommendation

Where objections to a magistrate judge's R & R are filed, the Court must conduct a *de novo* review of the contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)).  This only applies to the extent that a party's

---

[4]

Counsel for the Bureau of Prisons employees notes that Defendant Hicks is unrepresented by the U.S. Attorney's Office as no request for representation has been made on her behalf. (*See* Doc. 152, 2 n. 1.) Defendants, however, state that claims against Defendant Hicks can be dismissed *sua sponte* for the reasons advanced for dismissal of claims against all defendants. (*Id.*) Upon review of the docket, there is no evidence that Defendant Hicks has ever been served in this action, nor has counsel entered an appearance on her behalf. Upon Order of Magistrate Judge Mehalchick, the Marshal was ordered to serve Defendant Hicks. (Doc. 99.)The Marshal sought a waiver of service of summons from Defendant Hicks. (Doc. 111.) However, no waiver was received because the Marshal was unable to make contact with Defendant Hicks. (*Id.*) It appears no action was taken by the Marshal to ascertain the address of Defendant Hicks since September 4, 2014. However, as I will direct the Clerk of Courts to terminate Defendant Hicks from this action, *see* Section C(7) *infra*, no further action is needed.

objections are both timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).

In conducting a *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper.  *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994).  Uncontested portions of the report may be reviewed at a standard determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7.  At the least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## 2.      Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed f actual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  However, mere conclusory statements

6

will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d

at 1196.  The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

"The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Att'y Gen.,* 655 F.3d 333, 339 (3d Cir.2011). *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," especially when dealing with imprisoned *pro se* litigants. *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir.2013) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) But, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala* 704 F.3d at 245 (citing *Riddle v. Mondragon,* 83 F. 3d 1197, 1202 (10th Cir. 1996)).

## C.    Discussion

### 1.    Lack of Objection

Kates does not object to Magistrate Judge Saporito's recommendation regarding his requests for Declaratory and Injunctive Relief and for alleged violations of various federal criminal statutes. (Doc. 180, 4-5.) Having reviewed the R & R and finding no error, or manifest injustice, I will adopt Magistrate Judge Saporito's recommendation. Kates's claims for declaratory and injunctive relief will be dismissed as moot and his claims for violation of federal criminal statutes[5] will be dismissed with prejudice for failure to state a claim upon

---

[5]

Kates's complaint and objections are replete with references to conspiracy against him, in various forms,  but he does not object to dismissal of his claims under various criminal statutes, among them alleged violations of 18 U.S.C. § 241 (conspiracy to deprive civil rights); 18 U.S.C. § 242 (deprivation of civil rights); 18 U.S.C. § 371 (conspiracy to defraud the United States; and 18 U.S.C. § 1001 (false or fraudulent statements to a federal agency). Kates's claims for violations of federal criminal statutes will be dismissed with prejudice. A conspiracy claim under *Bivens* requires that a complaint contain "enough factual matter (taken as true) to suggest that an agreement was made," in other words, "plausible grounds to infer an agreement." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).  Kates has

which relief can be granted.

## 2. Violations of Prison Regulations and Policies

Kates objects to Magistrate Judge Saporito's recommendation that his claims based on alleged violations of Bureau of Prisons ("BOP") regulations and policies be dismissed *sua sponte*. (Doc. 180, 8-9.) Upon review of Magistrate Judge Saporito's recommendation and the cited cases, Kates's objection will be overruled. "A violation of a prison regulation without more does not state a constitutional violation." *Gibson v. Fed. Bureau of Prisons,* 121 F. App'x 549, 551 (5th Cir. 2004) (citing *Edwards v. Johnson,* 209 F.3d 772, 779 (5th Cir.2000) (failing to follow "BOP policy . . . does not afford a basis for relief as a violation of prison regulations in itself is not a constitutional violation.")); *see also Oriakhi v. Wood*, No. 3:CV-05-0053, 2006 WL 859543, at *4 (M.D. Pa. Mar. 31, 2006). Despite Kates's argument that the program statements and regulations he cites[6] "give rise to implicate [sic] constitutional violations," his argument fails. He has failed to demonstrate how the violation of BOP program statements and/or regulations is in fact a violation of his constitutional rights. Kates's reliance on *Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S. Ct. 1511, 1522, 149 L. Ed. 2d 517 (2001) Is not helpful. (Doc. 180, 5.) *Alexander* does not lend support to his argument because he has failed to demonstrate how the alleged violation of the regulations and program statements leads to a cause of action under *Bivens*. *See Corr. Servs. Corp. v.*

---

failed to allege any facts to support the inference there was an agreement to deprive him of his civil rights and therefore, he has failed to state a claim for conspiracy.

[6]

      Kates cites the following BOP Program Statements ("P.S.") and regulations: P.S. 5566.06 and 28 C.F.R. §§ 552.21, 552.22, and 552.23, setting forth the BOP policies and procedures with respect to the use of force against prisoners; BOP P. S. 5521.06, establishing procedures and criteria for inmate cell searches; BOP P. S. 3420.09, establishing ethical standards for BOP employees; and BOP P. S. 6010.05, establishing policies and procedures for the provision of medical services. Kates purportedly also originally cited BOP P. S. 5500.13, which is alleged to establish standards for the supervision of subordinate staff, however, a statement numbered 5500.13 does not appear to exist, nor does Kates cite such in his objections.

*Malesko*, 534 U.S. 61, 68, 122 S. Ct. 515, 520, 151 L. Ed. 2d 456 (2001) (Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants" beyond alleged violations by federal actors of the Fourth Amendment, Fifth Amendment Due Process clause, or the Cruel and Unusual Punishments clause of the Eighth Amendment.)   Kates's claims for violation of BOP regulations and program statements will be dismissed with prejudice and he will not be permitted leave to amend these claims based on futility.

### 3.   Eighth Amendment Denial of Medical Care Claims

Magistrate Judge Saporito recommends that Kates's Eighth Amendment claim for denial of medical care be dismissed for failure to state a claim. (Doc. 179, 24.) Kates objects to this recommendation and argues that he "verbally and in writing gave medical staff request [sic] to be evaluated, not only for x-rays, M.R.I.s etc. but for an eye test, concussion test, pain medication and evaluation for rib, neck, back and other injuries stated in [his] complaint," but all requests were denied. (Doc. 180, 8.) In the R & R, Magistrate Judge Saporito states that the injuries alleged by Kates do not constitute serious medical needs and recommends dismissal. (Doc. 180, 21-22.) Kates counters that the alleged injuries, *i.e.,* his alleged "swollen left temple, possible concussion, bruised ribs, thigh bruised [sic], cut knee, right and left wrist injuries, with the right wrist being possibly fractured also right finger fractured and neck and back bruises," (Doc. 2, ¶¶ 23-24.) were serious medical needs for which he did not receive treatment. Kates alleges he was only treated for the cut on his knee. (Doc. 2, ¶ 23.)

First, despite naming twenty defendants in his complaint, Kates has only stated a potentially viable Eighth Amendment claim against Defendants Hicks and Pigos. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official. . .will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis,* 372 F. 3d 218, 236 (3d Cir. 2004);  *see also Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.

1993); *Serrano v. Folino,* 339 F. App'x 254, 258 (3d Cir. 2009) (per curiam) ("While *Spruill* does not absolutely bar a claim against a non-medical prison official, it allows such a claim only if the non-medical official has actual knowledge of unconstitutional treatment and fails to remedy the violation."); *Jones v. Falor*, 135 F. App'x 554, 556 (3d Cir. 2005) (unpublished opinion). Kates does not sufficiently allege that any of the other named defendants were deliberately indifferent to any potentially serious medical need or needs.[7]  Additionally, a *"Bivens"* claim cannot rely on the theory of respondeat superior," *Turney v. Attorney Gen. for U.S. ex rel. Sec'y of Labor*, 502 F. App'x 180, 182 (3d Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662,  675–77, 129 S.Ct. 1937 (2009)), and "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Bistrian*, 696 F.3d at 366.

Turning to Defendants Hicks and Pigos, the R & R states, and Defendants argue, that Kates has failed to state a claim because the documents attached to his complaint show that he was treated, both on the night of the incident and on the following day, by medical personnel. (Doc. 179, 21-23; Doc. (citing Doc. 2-1, 24-25; Doc. 2-2, 1-2.)) The R & R concludes, Kates was simply dissatisfied with the treatment he received and such dissatisfaction does not amount to an Eighth Amendment violation. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976), the Supreme Court set forth that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" 429 U.S. at 104, 97 S. Ct. at 291. However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.*

---

[7]
    Kates's Medical Evidence Chart (Doc. 2-3) lists several names, assumed to be employees of USP Lewisburg of those who he allegedly made his medical requests to. However, other than alleging that he complained to Defendant Hicks about his injuries on May 24, 2012 and that he "sent a medical copout to [Lieutenant] Sherman thru [sic] [Defendant] Eroh, Jr.," no other named Defendant is alleged to have played a role in his claims of denied medical care.

at 105, 97 S. Ct. at 291.  To state a claim for an Eighth Amendment violation, "a complaint "must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Gamble,* 429 U.S. at 106, 97 S.Ct. 285)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987) (citation omitted). A serious medical need may also be established if the denial or delay of medical care results in the unnecessary and wanton infliction of pain, or "suffering a life-long handicap, or permanent loss." *Id.*

Kates has alleged that he made verbal and written requests for evaluation of the injuries he complained of. (*See* Doc. 2-3.) Specifically, Kates alleges that he told Defendant Hicks that he thought his wrist was broken and that his ribs and right temple were hurting (Doc. 2, ¶ 18. ), but she did not accurately report his injury complaints in her medical report. (Doc. 1, ¶ 12.)  Kates also attached a letter to his complaint, written by a paralegal, that was purportedly sent to Defendant Dr. Kevin Pigos, requesting that Kates and his cell mate be examined. (Doc. 2-3, 3.)[8] The letter lists Kates's injuries as possible fractured wrists, possible fractured ribs and broken finger, back and neck pain, recurring headaches and cuts on his ankles. (*Id.*) Kates argues that because he was:

> in 23-1 confinement, locked behind a door and my only means to medical is to write it down or ask verbally, then this denial and refusal for medical help can be easily accomplished. So it would be nearly impossible for plaintiff to provide concrete evidence, when it is being cover [sic] up to prevent the truth from coming out about his serious injuries

---

[8]
    Kates also alleges that the letter sent to Defendant Warden Thomas put him on notice of the denial of medical care (Doc. 2, 11.), however, there is no evidence of record to demonstrate that the warden was deliberately indifferent to any failure of the medical personnel to treat Kates, especially in light if of the fact that the letter purportedly sent to Defendant Thomas does not address his claims of denied medical care, only asks that he receive proper medical care. (*See Id.*)

(Doc. 180, 8.) It is true that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290. Despite that, Kates must still allege that he had serious medical needs to which medical personnel were deliberately indifferent, causing him harm.

Kates was not denied all medical care. He admits he received care, just not to the extent he requested. He also states that his alleged injuries could not be identified by the naked eye. (Doc. 180, 10.) Kates fails to allege that his injuries were diagnosed as requirng treatment that he did not receive, fails to allege that the injuries were so obvious that a lay person could identify them and also fails to allege how the injuries he lists and the purported lack of medical treatment resulted "in the unnecessary and wanton infliction of pain, a lifelong handicap, or permanent loss." *Lanzaro,* 834 F.2d at 347 (citation omitted). Even if Kates did report additional injuries to Defendant Hicks, he fails to allege how her alleged falsification of the medical report impacted his medical care. *See Rivera v. Tennis*, No. CIV.A 1:09-0888, 2010 WL 2838603, at *7 (M.D. Pa. May 20, 2010) *report and recommendation adopted*, No. 1:CV-09-0888, 2010 WL 2838605 (M.D. Pa. July 19, 2010).  Additionally, the medical evidence chart attached to the complaint indicates that Kates had multiple contacts with medical personnel after May 24, 2012 (*See* Doc. 2-1, 24-25), reported his injuries, and was told by Francis Fasciana, MLP, that he would not be put in for X-rays. (Docs. 2-3, 2.) Kates's submitted evidence demonstrates a medical judgment was made, to which he clearly disagreed, but such disagreement is insufficient to state an Eighth Amendment denial of medical care claim. I will adopt Magistrate Judge Saporito's recommendation and dismiss Kates's claims for denial of medical care in violation of the Eighth Amendment as to all Defendants.

### 4.    Eighth Amendment Excessive Force Claims

Magistrate Judge Saporito recommends that Kates's Eighth Amendment cruel and unusual punishment claim be dismissed for failure to state a claim based on the favorable termination rule. (Doc. 179, 28); *see Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct.

2364, 2372, 129 L. Ed. 2d 383 (1994) (claims for harms caused by an allegedly unlawful conviction or sentence are not cognizable unless the underlying conviction or sentence has been reversed, expunged or declared invalid.); *Edwards v. Balisok*, 520 U.S. 641, 648, 117 S. Ct. 1584, 1589, 137 L. Ed. 2d 906 (1997) (challenges to the propriety of a decision maker's determination in a disciplinary proceeding were not cognizable). Kates objects based on what he alleges was a "severe, unjust, sadistic, capricious beating" on May 24, 2012,  (Doc. 179, 10.) and argues that his claim should survive because the alleged treatment underlying his claim of an Eighth Amendment violation occurred prior to the disciplinary hearing. Kates further argues that the two are not related and the fact that the DHO's determination stands, does not preclude his claims. (*Id.* at 11.) Defendants argue that Magistrate Judge Saporito's recommendation that Kates's claim is barred by the favorable termination rule is correct and should be adopted. (Doc. 181, 14.) Upon review, I disagree and will not adopt this recommendation.

Kates does not seek to render the disciplinary proceeding, or its subsequent sanctions, invalid. Instead, he alleges that excessive force was used against him in violation of the Eighth Amendment by the defendants. *See Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997) (citing *Heck*, 512 U.S. 477, 114 S. Ct. 2364). His claims are not barred by the favorable termination rule because his Eighth Amendment excessive force claim does not challenge the underlying DHO hearing, nor its outcome.[9]

However, Kates does not sufficiently allege the use of excessive force against all named Defendants. It is only those claims addressed as follows that will be remanded to Magistrate Judge Saporito for further proceedings.

Kates alleges that Defendant Packer slammed Kates's hands and fingers in the food slot and after Kates's jerked back, Defendant Packer ordered Kates to replace his hands.

---

[9]

The DHO proceedings and report may be relevant in any subsequent examination of Kates's claim for use of excessive force when remanded.

(Doc. 2, 4.) Kates alleges Defendant Packer then put cuffs on Kates's wrists "extremely tight" and then slammed his wrist in the slot for three to five seconds. (*Id.*) I agree with Defendants that Kates fails to allege that he expressed that the handcuffs were too tight. (Doc. 152, 14.); *See Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. 2005) ("no expression or signs of discomfort at the time he was handcuffed") And, Kates's argument that he "did not have to tell [Defendant Packer] about the cuffs causing him pain because he intentionally inflicted it," (Doc. 172, 19.) is insufficient to state a claim for use of excessive force in applying cuffs. However, viewing Kates's allegations that Defendant Packer twice slammed his hands and wrists in the food slot in a light most favorable to him, he states a plausible claim for use of excessive force.

Additionally, Kates alleges that, after coming out of the cell, and while being escorted by three corrections officers, Defendants Wise, Stroud, and Wagner, he was subjected to excessive force in violation of the Eighth Amendment. Kates alleges that the "officer who was controlling his head . . . was intentionally squeezing [his] neck and throat area making it hard for [him] to breath. " (Doc. 2, ¶¶ 12; 14-15.) Kates also alleges that once he was off the range, the officer holding his arm, tried to trip him and make him fall and when unsuccessful, slammed him to the ground, yelled at him to stop resisting and was punching and kicking Kates, while other unknown officers joined in. (*Id.* ¶¶ 14-15.) Kates alleges he balled up in a fetal position and was "continuously punch, kick, and stomp [sic] in the ribs, legs, back, head, and face" for what seemed like a few minutes. (*Id.*) He alleges he was then aggressively picked up by the cuffs and taken into the shower area where the officers who were holding his arms, kept twisting and bending his arms, trying to break them, and the officer holding his right arm bent his thumb backwards for minutes. (*Id.*) Kates further alleges that he was cut by a corrections officer with a razor or some sharp object resulting in a cut on his wrist. (*Id.* at ¶¶ 18-19.)

Viewing the allegations in the light most favorable to Kates and taking his factual allegations as true, as I must do when faced with a Rule 12(b)(6) motion, Kates has stated

a claim for use of excessive force in violation of the Eighth Amendment against Defendant Packer. Additionally, as the named parties who are alleged to have escorted Kates and are also alleged to have punched, kicked and stomped on Kates, Kates has stated a claim against Defendants Wise, Stroud, and Wagner for use of excessive force. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002). I will reject the recommendation for dismissal and remand these claims to Magistrate Judge Saporito. *See Hudson v. McMillian,* 503 U.S. 1, 112 S. Ct. 995 (1992); *Whitley v. Albers,* 475 U.S. 312, 106 S. Ct. 1078 (1986).

### 5.    Eighth Amendment Failure to Intervene/Protect

The R & R mentions Kates's claims for failure to intervene under the Eighth Amendment against certain Defendants (Doc. 179, 25.), but does not list such as a separate alleged claim. Defendants move to dismiss any alleged failure to protect claim. (Doc. 152, 8.) Kates addressed Defendants' motion in his response to the motion to dismiss and argues that he states a claim based on violation of BOP program statements and because "the defendants were present, recognized the excessive beating and ignore [sic] it." (Doc. 172, 11.) Magistrate Judge Saporito recommends that Kates's Eighth Amendment claims for use of excessive force be dismissed for failure to state a claim, but makes no recommendation regarding Kates's Eighth Amendment claims for failure to protect/intervene against the following Defendants: Defendant Foura (Doc. 1, 3; Doc. 2, ¶ 27.); Defendant Booth (Doc. 1, 4; Doc. 2 at ¶ 30.); Defendant Anderson (Doc. 1, 5; Doc. 2 at ¶ 32.); Defendant Campbell (Doc. 1, 3; Doc. 2 at ¶ 33.); Defendant Figlo (Doc. 1, 3; Doc. 2 at ¶ 38); Defendant Hicks (Doc. 1, 7; Doc. 2 at ¶ 39.); Defendant Wise (Doc. 1, 6; Doc. 2 at ¶ 34.); Defendant Stroud (Doc. 1, 6; Doc. 2 at ¶ 35.); Defendant Thwaits (Doc. 1, 6; Doc. 2 at ¶ 36.*)*; Defendant Buebendorf (Doc. 1, 7; Doc. 2 at ¶ 37.); Defendant Wagner (Doc. 1, 8; Doc. 2 at ¶ 40.); Defendant Loyek (Doc. 1, 8; Doc. 2 at ¶ 41.); Defendant Shirk (Doc. 1, 9; Doc. 2 at ¶ 42.); Defendant Mattern (Doc. 1, 9; Doc. 2 at ¶ 43.); Defendant Brandt (Doc. 1, 10; Doc. 2 at ¶ 44.); Defendant Eroh (Doc. 1, 10. Doc. 2 at ¶ 45.); and Defendant Thomas (Doc., 1,11; Doc. 2 at ¶ 47.).

Claims of failure to intervene are cognizable under the Eighth Amendment, but Magistrate Judge Saporito failed to address these claims; most likely because he recommends dismissal of Kates's excessive force claim. For a failure to intervene claim, the above-named defendants must have witnessed the use of excessive force and failed to intervene despite "a realistic opportunity to intervene." *Smith v. Mensinger*, 293 F. 3d 641, 652 (3d Cir. 2002); *see also Urrutia v. Harrisburg Cty. Police Dep't*, 91 F.3d 451, 456 (3d Cir. 1996). The allegations of the complaint regarding the alleged force used, taken as true, could provide the basis for a failure to intervene during any episode of the application of excessive force. However, the only Defendants Kates has alleged were present during the alleged assault, and thus who could potentially intervene, were Defendants Eroh, Brandt, Packer, Wise, Stroud, Wagner, and Booth. (*See* Doc. 1, 10; Doc. 2, ¶¶ 7-18.) Because I will remand Kates's excessive force claim, I will deny Defendants' motion to dismiss with regard to Defendants Brandt, Packer, Wise, Stroud, Wagner, and Booth. A determination of Kates's failure to intervene claim against these defendants is premature in light of the survival of Kates's excessive force claim. These Defendants are permitted to file additional dispositive motions with regard to this claim.[10]

The motion to dismiss with be granted with regard to the following defendants for

---

[10]

Kates additionally contends that it is "well documented and expressly noted by officials in the past and present that Lewisburg has a history of assaulted inmates in blind areas, plus they are aware of this conduct, thru [sic], staff gossip, excessive lawsuits filed and the local news media." (Doc. 172, 12.) Kates attached a newspaper article to his complaint, purportedly to demonstrate such history and knowledge. (Doc. 2-1, 23.) Kates fails to allege sufficient circumstantial evidence to allow for an inference that any Defendant was aware of a substantial risk of harm to him. *See Farmer v. Brennan*, 511 U.S. 825, 842-43, 114 S. Ct. 1970, 1981-82, 128 L. Ed. 2d 811 (1994) ("if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.").

failure to state a claim upon which relief can be granted: Defendants Foura, Anderson, Campbell, Figlo, Hicks, Thwaits, Buebendorf, Loyek, Shirk, Mattern, and Thomas.

### 5.   Fifth Amendment Due Process Claims

Magistrate Judge Saporito recommends dismissal of Kates's Fifth Amendment Due Process claim without prejudice to permit the filing of an action pursuant to 28 U.S.C. § 2241. (Doc. 179, 25-29.) This recommendation is based on the favorable termination rule. (*Id*.) Although Kates objects to R & R on the whole, his objections primarily reiterate his contentions regarding the Disciplinary Hearing and do not specifically object to Magistrate Judge Saporito's recommendation regarding the alleged due process claim. (Doc. 180, 10-12.) However, even if Kates had specifically objected to this recommendation, I find that, after *de novo* review, he has failed to state a claim upon which relief can be granted. I will adopt Magistrate Judge Saporito's recommendation and dismiss Kates's Fifth Amendment Due Process Claim without prejudice. I will not grant Kates leave to amend this claim because amendment would be futile as there has been no allegation that the DHO's determination has been overturned or otherwise vacated. *See Edwards,* 520 U.S. at 648, 117 S. Ct. at 1589.

### 6.   Leave to Amend

Magistrate Judge Saporito recommends that Kates not be permitted leave to amend his complaint based on futility of amendment. (Doc. 179, 29.) Kates objects and requests that he be granted leave to amend so that "he can exclude some claims and clarify others." (Doc. 180, 3.) In light of the rejection of the recommendation to dismiss Kates's complaint in its entirety, and based on the reasoning for denying amendment of specific claims discussed above, Kates's objection will be overruled and he will not be permitted to amend the complaint in its entirety due to the extensive nature of the original filings and the remand for further proceedings.

### 7.   Termination of Defendants

In light of above, I will direct the Clerk of Courts to terminate certain defendants from this action. I will direct the Clerk of Courts to terminate the following Defendants: Lt. Justin Foura; D.H.O. Angelo Jordan; C.O. Brandon Mattern; Brandon Shirk; Charles Anderson; Dennis Campbell; Jerald Loyek; Scott Buebendorf; Suzanne Figlo; A. Hicks; Kevin Pigos; Warden J.E. Thomas; and Michael Thwaits.

### D.   Conclusion

For the above stated reasons, I will adopt in part and reject in part Magistrate Judge Saporito's R & R. I will dismiss Kates's claims for declaratory and injunctive relief as moot. I will dismiss Kates's claims for violation of federal criminal statutes, violation of BOP program statements and regulations, and his Fifth Amendment Due Process claims with prejudice for failure to state a claim upon which relief can be granted. I will also dismiss Kates's Eighth Amendment denial of medical care claim with prejudice for failure to state claim upon which relief can be granted.  I will remand the remaining claims to Magistrate Judge Saporito for further proceedings.

An appropriate order follows.

_/s/ A. Richard Caputo_____
A. Richard Caputo
United States District Judge