UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID E. KATES, | : | NO. 3:CV-13-1525 |
| Plaintiff | : | |
| | : | (Caputo, J.) |
| v. | : | (Saporito, M.J.) |
| | : | |
| ROBERT PACKER, ET AL., | : | |
| Defendants | : | Filed Electronically |

### DEFENDANTS' STATEMENT OF MATERIAL FACTS

Defendants S. Booth, Lieutenant; C. Brandt; Lieutenant; J. Stroud, Correctional Officer; R. Packer, Correctional Officer; J. Wagner, Correctional Officer; D. Eroh, Jr., Correctional Officer; and G. Wise, Correctional Officer, pursuant to Local Rule 56.1, hereby submit the following statement of material facts in support of their motion to dismiss and for summary judgment. Kates is advised that, pursuant to Local Rule 56.1, all facts set forth in this statement will be deemed admitted unless controverted by him with references to the record supporting his position.

1. On May 24, 2012, Kates claims that around 7:00 p.m., Officer Packer and another correctional officer entered his cell, took property and damaged his cell. Deposition of David E. Kates (Ex. A) at 18 ¶ 23 to 19 ¶ 8.

2. Kates said that he notified Officer Eroh about Officer Packer's action, gave Eroh a list of property that was missing, and asked Eroh to notify his superior, a lieutenant. Id. at 19 ¶¶ 9-15.

3.  Fifteen to twenty minutes after Kates made this report to Eroh, Lieutenant Booth came to the cell.  Id. at 19 ¶¶ 9-22.

4.  Kates told Booth about the missing property, and Kates did not think that Booth believed his story.  Id. at 19 ¶ 19 to 20 ¶ 18.

5.  After Booth left the cell that night, Kates, not feeling satisfied by the response by Booth, blocked his cell window with paper so staff could not see into the cell.  Id.

6.  Kates admits that inmates are not allowed to cover their cell windows per BOP policy.  Id. at 20 ¶ 24 to 21 ¶ 1.

7.  Kates knows that the proper way to resolve a dispute is to informally address it with staff or either file an administrative or tort claim remedy.  Id. at 21 ¶¶ 2-5, 18-23.

8.  Kates knows that putting a piece of paper on a cell window threatens the security of the institution because staff cannot see into the cells for the safety and well-being of inmates.  Id. at 22 ¶ 22 to 23 ¶ 4; id. at 37 ¶¶ 13-24.

9.  Officer Eroh came down the hallway and saw the paper, and asked if Kates and his cellmate were ok, and requested that the inmates take down the cardboard, and Kates took the cardboard down.  Id. at 22 ¶¶ 3-8.

10. During this time, Lieutenant Foura arrived at Kates' cell.  Id. at 20 ¶¶ 19-23.

11. Still angered by his perceived lack of response by prison staff about his property, around 10:00 p.m. that night, Kates put the cardboard back up to block the window and protest again. Id. at 22 ¶¶ 9-14.

12. When the officers came to do their count and could not see in the cell, they asked Kates to take down the cardboard. Id. at 23 ¶ 15-22.

13. Lieutenant C. Brandt arrived on the scene and found Kates' cell window still covered and Kates and his cellmate unresponsive. Declaration of C. Brandt (Ex. B) ¶ 2.

14. Due to their unresponsiveness and in a fear for safely, it was determined an immediate use of force was required. See id.

15. Kates and his cellmate used a mattress to obstruct access to his cell. See id.

16. Staff opened the food slot and used a broom handle to remove the mattress from obstructing the cell. See id.

17. Lieutenant Brandt then administered two, two second bursts of chemical agents into the cell. See id.

18. Despite the first two second burst of chemical agent being deployed, Kates decided to keep the cardboard on the window because it was not bothering him. Kates Dep. at 27 ¶ 24 to 29 ¶ 2.

19. Kates knew he would be taken out of his cell after the chemicals were disbursed and his intent was to continue to protest his property dispute. Id. at 20-25.

20. After the second two second burst of chemical agents, Kates took down the cardboard from his window. <u>Id.</u> at 30 ¶¶ 17-20.

21. Next, Kates claims that he turned his back to the cell door, and placed his hands behind his back and while they were behind his back, he placed his hands in the food slot of the cell door to be handcuffed. <u>Id.</u> at 32 ¶¶ 8-23.

22. While Kates' hands were in the food slot of the cell door and he was facing opposite the door, an officer allegedly slammed his hands with the door of the food slot. <u>See id.</u>

23. Kates first testified, like he alleged in the complaint, that Officer Packer slammed his hands while he was in the food slot. <u>See id.</u>

24. Kates, however, then testified that he did not know who slammed the door, as it was possible it could have been one of the other officers outside his cell. <u>Id.</u> at 32 ¶ 24 to 33 ¶ 1.

25. The slamming of the door on Kates' wrist did not cause him to bleed or him to have any broken bones. <u>Id.</u> at 33 ¶ 25 to 34 ¶ 20.

26. Kates has no evidence that he had an injury to his wrist or arm based on the alleged slamming of the food slot door.

27. Officers handcuffed Kates and took him out of his cell, with one officer holding his head in the front, an officer on the left, and an officer on the right. <u>Id.</u> at 42 ¶ 14 to 43 ¶ 1.

28. The officers escorted Kates off the range. <u>Id.</u> at 43 ¶¶ 10-11.

29. Kates claims that after he was escorted off the range, the officers took him to a location out of camera range, an officer slammed him to the ground, and started punching, kicking, and assaulting him. Id. at 43 ¶¶ 12-21.

30. Kate does not know who allegedly assaulted him. Id. at 48 ¶ 21 to 49 ¶ 4.

31. Kates indeed testified: "I didn't actually see who kicked me or who punched me or who did any of the assaulting." Id. at 51 ¶¶ 5-6.

32. Kates believes it is possible that officers that were escorting him did not assault him. Id. at 49 ¶¶ 5-8.

33. Kates believes that his alleged assault took place over 35-40 seconds. Id. at 60 ¶¶ 18-21.

34. Kates also does not know where any of the officers were located when he was allegedly being kicked and punched. Id. at 50 ¶ 1 to 51 ¶ 6.

35. Although Kates states that Wise, Stroud, and Wagner were "the only officers around" during his alleged assault, he does not know where they were located during the alleged assault and whether they were in a position to intervene. Id. at 52 ¶ 13 to 53 ¶ 12.

36. Lieutenant Brandt filed a report that while Kates was being escorted from his cell, he became combative, and officers brought him to the floor. See Brandt Decl. (citing 05/24/2012 Brandt Memo to File) (Ex. B).

37. Officer Wise filed a report that he assisted escorting Kates to the second floor shower area to be decontaminated, when Kates became combative and was

placed on the floor to regain control.  <u>See</u> Wise Decl. (citing 05/24/2012 Wise Memo to File) (Ex. C).

38. Officer Wagner filed a report that he also escorted Kates to the shower area and Kates became combative and he was taken to the ground to gain control over him.  <u>See</u> Wagner Decl. (citing 05/24/2013 Wagner Memo to File (Ex. D).

39. Officer Eroh, Jr. filed a report that he observed Kates' window covered on May 24, 2012, and the shift lieutenant was notified, and Eroh, Jr. had no other involvement in the matter.  <u>See</u> Eroh, Jr. Decl. (citing Eroh, Jr. Memo to File) (Ex. E).

40. Kates does not know if Eroh, Jr. was on the second floor landing when he was allegedly assaulted.  Kates Dep. (Ex. A) at 63 ¶¶ 10-24.

WHEREFORE, this Court should grant summary judgment to Defendants Booth, Brandt; Stroud, Packer, Wagner, Eroh, Jr., and Wise.

                                            Respectfully submitted,

                                            BRUCE D. BRANDLER
                                            United States Attorney

                                            s/ Michael Butler
                                            Michael Butler
                                            Assistant United States Attorney
                                            PA 81799
                                            United States Attorney's Office
                                            228 Walnut Street, 2d Floor
                                            P.O. Box 11754
                                            Harrisburg, PA 17108
                                            Tel:  717-221-4482
                                            Fax: 717 221-2246

Dated:  March 1, 2017                          Michael.J.Butler@usdoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID E. KATES,** | : | NO. 3:CV-13-1525 |
| Plaintiff | : | |
| | : | (Caputo, J.) |
| v. | : | (Saporito, M.J.) |
| | : | |
| **ROBERT PACKER, ET AL.,** | : | |
| Defendants | : | Filed Electronically |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on March 1, 2017, she caused to be served a copy of the attached

## DEFENDANTS' STATEMENT OF MATERIAL FACTS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

David E. Kates
Reg. No. 30428-077
FTC Oklahoma City
P.O. Box 898801
Oklahoma City, OK  73189

                                          s/Michele E. Lincalis
                                          Michele E. Lincalis
                                          Supv. Paralegal Specialist