# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID E. KATES, | NO. 3:13-CV-01525 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| C.O. ROBERT PACKER, *et al.*, | (MAGISTRATE JUDGE SAPORITO) |
| Defendants. | |

## MEMORANDUM

Presently before me is the Report and Recommendation (Doc. 250) of Magistrate Judge Joseph F. Saporito, Jr. Magistrate Judge Saporito recommends that the Motion for Summary Judgment (Doc. 226) filed by Defendants R. Packer, G. Wise, J. Stroud, J. Wagner, S. Booth, C. Brandt, and D. Eroh, Jr. (collectively, where appropriate, "Defendants") be granted in part and denied in part in this *pro se* prisoner civil rights action brought by Plaintiff David Kates alleging claims for excessive force and failure to intervene. The Magistrate Judge recommends that summary judgment be granted to Defendant Booth, but denied as to the remaining Defendants, *i.e.*, Packer, Wise, Stroud, Wagner, Eroh, and Brandt. Kates objects to the recommendation that summary be granted in favor of Defendant Booth, while Defendants object to the recommendation to deny summary judgment to Packer, Wise, Stroud, Wagner, Eroh, and Brandt. For the reasons that follow, the Report and Recommendation will be adopted in part and rejected in part, Defendants' objections to the Report and Recommendation will be overruled, and Kates' objection to the Report and Recommendation will be sustained.

## I. Background

The relevant facts are set forth in detail in the Magistrate Judge's Report and Recommendation and will not repeated in their entirety here. (*See* Doc. 250, *generally*). Briefly, though, on May 24, 2012, Kates, then an inmate at USP

Lewisburg, claimed corrections officer took his property after a shakedown of his cell. Dissatisfied with the response to his complaint of missing property, he covered his cell window with paper on more than one occasion that night.

At around 10:00 p.m., corrections officers discovered that the cell window was again covered, and Kates and his cellmate also blocked the cell door with a mattress. Brandt arrived at the cell and found the window covered. Kates and his cellmate were also unresponsive. After staff opened the food slot to the cell door and moved the mattress with a broom handle, Brandt administered two bursts of a chemical agent into the cell. The cell window was then uncovered.

Packer then instructed Kates and his cellmate to submit to restraints. Kates approached the cell door and observed Packer at the door with restraints in his hand. Kates turned his back to the door and placed his hands through the food slot for the application of the handcuffs. Kates testified that while his hands were through the food slot, his hands or wrists were twice slammed with the food slot door.[1]

Kates was then cuffed, and he, along with his cellmate, were removed from the cell. Kates was escorted off the range, with Wise holding his left arm, Stroud holding his head, and Wagner holding his right arm.

On the way to the shower area to be decontaminated, Kates was slammed to the ground and punched and kicked while he and the officers were on the "landing" in an area of the prison out of view of surveillance cameras. This incident lasted for 30 to 45 seconds. Kates testified that while he "didn't actually see who kicked me or who

---

[1] Kates testified that Packer "smashed" his hands in the food slot. (*See* Kates Dep., 32:12-13). Kates also testified, however, that he did not see Packer slam the food slot door on his hands and it was therefore possible for an unidentified corrections officer to have slammed his hands. (*See id*. at 33:1-7). The Magistrate Judge found it reasonable to accept Kates' inference for summary judgment purposes that Packer was the officer who applied the handcuffs and slammed the food slot door. (*See* Doc. 250, 6 n.4). Defendants' objection to this finding is addressed in detail in the text. *See infra* Part II.B.

2

punched me or who did any of the assaulting" (Kates Dep., 51:5-6), based on documents prepared by Defendants, he believed that "all of the officers who escorted me and had me and took me to the ground assaulted me," *i.e.*, Stroud, Wise, and Wagner. (*Id*. at 53:5-7).[2] Kates was then escorted to the shower area, where he was medically assessed and decontaminated.

Based on the foregoing, Kates commenced this action on June 7, 2013. On March 29, 2016, I granted in part and denied in part Defendants' motion to dismiss Kates' Complaint. (*See* Docs. 186-187, *generally*). Specifically, Kates was permitted to proceed with his Eighth Amendment excessive force claims against Packer, Wise, Stroud, and Wagner, as well as his Eighth Amendment failure to intervene claims against Packer, Booth, Brandt, Wise, Stroud, Wagner, and Eroh. (*See id*.).

On February 15, 2017, Defendants filed a motion for summary judgment seeking the entry of judgment in their favor on all of Kates' remaining claims. (*See* Doc. 226, *generally*). On March 1, 2017, Defendants filed their statement of facts and brief in support of that motion. (*See* Docs. 228-229, *generally*). Kates' answer to Defendants' statement of facts and brief in opposition to the motion for summary judgment were filed on April 25, 2017. (*See* Docs. 241-242, *generally*). Kates also filed supplemental documents in opposition to Defendants' motion for summary judgment on August 15, 2017. (*See* Docs. 247-248, *generally*).

Magistrate Judge Saporito issued the instant Report and Recommendation under review on August 24, 2017. (*See* Doc. 250, *generally*). Therein, Magistrate Judge Saporito characterizes Kates' claims as involving two separate incidents on May 24, 2012 - the slamming of the hands and wrists in the food slot door and the assault on the "landing." (*See id*. at 10-26).

---

[2] Defendants contend that they are entitled to summary judgment because Kates testified that it was possible that other officers on the "landing" could have assaulted him since his head was down and he was unable to see. That issue is addressed below. *See infra* Part II.B.

3

With respect to the failure to intervene claims, the Magistrate Judge recommends that summary judgment on Kates' claim against Eroh for the second incident be granted because there is no evidence that Eroh was present on the "landing," but that summary judgment be denied regarding the cell door incident because record evidence indicates that Eroh was present during that altercation. (*See id*. at 10-13). Regarding the claims against Booth, the Report and Recommendation states that there is no evidence in the record that he was present for either incident, and, as a result, summary judgment should be granted on both claims against Booth. (*See id*. at 13-14). Conversely, Magistrate Judge Saporito recommends that summary judgment be denied to Brandt on the failure to intervene claim for both incidents because there is record evidence that he was present for the altercations at both the cell door and on the "landing." (*See id*. at 13).

As to the excessive force claims, the Report and Recommendation recommends that summary judgment be denied to Packer on the claim involving the slamming of the food slot door on Kates' hands. (*See id*. at 15). The Magistrate Judge found Defendants' argument that Kates had failed to produce any evidence that it was Packer that slammed the food slot door unconvincing, finding that Kates' deposition testimony that Packer told him to "cuff up" while he was standing on the other side of the door with handcuffs in his hand "to be a sufficient basis for a reasonable jury to infer that it was Packer, rather than some other officer, who slammed the food slot door on Kates' wrists." (*Id*.). Magistrate Judge Saporito additionally recommends that Defendants Wise, Stroud, and Wagner be denied summary judgment for the incident on the "landing" because Kates "testified unequivocally that 'all of the officers who escorted me and had me and took me to the ground assaulted me.' He has further identified these three defendants - Wise, Stroud, and Wagner - as the three correctional officers who were escorting him at the time of the assault on the landing, based on incident memoranda produced by the defendants in discovery." (*Id*. at 25).

Kates and Defendants filed objections to the Magistrate Judge's Report and

Recommendation. (*See* Doc., 253, *generally*; Doc. 256, *generally*). Kates argues that the Magistrate Judge erred in recommending summary judgment be granted in favor of Defendant Booth because the record demonstrates that Booth was present for both incidents but failed to intervene. (*See* Doc. 253, ¶¶ 5-8). Specifically, Kates contends that the range video footage and debriefing video which he previously reviewed demonstrate that Booth was present during these incidents, and, therefore, the recommendation to grant summary judgment in Booth's favor should be rejected. (*See id.*).[3] Defendants, on the other hand, as detailed below, raise four (4) objections to the Report and Recommendation. (*See* Doc. 256, *generally*). In short, Defendants argue that they are entitled to summary judgment on all of Kates' remaining claims in this case and that the Magistrate Judge erred in recommending to the contrary. (*See id.*). The objections to the Report and Recommendation are fully briefed and ripe for disposition.

## II. Discussion

**A.  Legal Standards.**

 **1.  Review of a Report and Recommendation.**

When objections to the magistrate judge's Report are filed, the court must conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). However, this only applies to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a *de novo*

---

[3]   In the Report and Recommendation, the Magistrate Judge noted that while Kates in his opposition to the motion for summary judgment referenced surveillance camera footage and a debriefing video, (*see* Doc. 242, ¶¶ 37-40), such evidence was not submitted into the record. (*See* Doc. 250, 11). Because it is unclear how Kates could have submitted these recordings to the Court, *i.e.*, he was given the opportunity to view the footage but he does not appear to have been given copies, (*see* Docs. 130, 156, 171, and 174), Defendants were directed to submit this evidence for review.

determination." *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Indeed, the Third Circuit has instructed that "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id*. at 7. In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Uncontested portions of the Report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g.*, *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**2. Summary Judgment.**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581

(3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

**B.   Defendants' Objections.**

Defendants argue that the Report and Recommendation contains four (4) errors. (*See* Doc. 256, *generally*). First, Defendants contend that the Magistrate Judge mistakenly found that this action includes a failure to intervene claim pertaining to the cell food door incident when no such cause of action was pled by Kates in the Complaint or identified in my March 29, 2016 Memorandum and Order granting in part and denying in part Defendants' motion to dismiss. (*See id*. at 6-7). Second, Defendants assert that the Magistrate Judge erred in recommending that the failure to intervene claims be permitted to proceed against Brandt "without conducting an analysis as to whether he had a realistic and a reasonable opportunity to intervene, and failed to intervene." (*Id*. at 8-9). The third error in the Report and Recommendation, says Defendants, is the Magistrate Judge's conclusion that Kates presented sufficient evidence to demonstrate that Packer is the officer that slammed his wrists and hands in the cell door food slot. (*See id*. at 9-12). The Magistrate Judge's final error, Defendants argue, is his recommendation to deny summary judgment to Wise, Stroud, or Wagner when Kates testified that there were additional officers near him during the alleged assault and he does not know which officers struck him. (*See id*. at 12-14). Based on the foregoing, Defendants request that their partial objections to the Report

and Recommendation be sustained and summary judgment be granted in their favor in the entirety. (*See id*. at 15).

Defendant's first objection will be overruled. In the Complaint, Kates alleged, *inter alia*, that Defendants Booth, Brandt, and Eroh failed to intervene. (*See* Doc. 1, ¶¶ 3, 17, 18). Kates further averred that force was used against him both when his hands and wrists were slammed in the cell door food slot and later when he was assaulted on the "landing." (*See* Doc. 2, ¶¶ 10, 14). In granting in part and denying in part Defendants' motion to dismiss, I noted that "[t]he allegations of the complaint regarding the alleged force used, taken as true, could provide the basis for a failure to intervene during any episode of the application of excessive force. " (Doc. 186, 17). Accordingly, the Magistrate Judge did not err in concluding that Kates raised a failure to intervene claim regarding the incident at the cell door.

Defendants next contend that even assuming Kates has a failure to intervene claim pertaining to the cell door incident, he nevertheless failed to come forward with any evidence to support that claim. (*See* Doc. 256, 6-7). Specifically, Defendants contend that absent from the record is any evidence that Eroh or Brandt should have anticipated the slamming of the food slot door on Kates' hands and wrists or that they were in a position to intervene to present such use of force from taking place. (*See id*.). "[A] corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had 'a realistic and reasonable opportunity to intervene' and 'simply refused to do so.'" *Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (quoting *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002)). In determining whether a defendant had a reasonable opportunity to intervene, courts consider "factors such as the 'temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, the ability of the non-intervening officer to perceive and/or hear the alleged assault,' among others." *Estep v. Mackey*, No. 11-207, 2013 WL 6533350, at *6 (W.D. Pa. Dec. 13, 2013) (quoting *Armbruster v. Marguccio*, No. 05-344, 2006 WL 3488969, at *8 (W.D. Pa.

Dec.4, 2006)).

Here, the record contains evidence that both Eroh and Brandt were at the scene during the time the claimed food slot door assault took place. (*See* Brandt Decl., ¶ 2 (noting that he was on the scene and the inmates submitted to hand restraints and were removed from their cell); Eroh Decl., ¶ 3 (present on the scene shortly after 10:00 p.m. when Kates' cell window was covered); Kates Dep., 63:12-20 (stating that Eroh was present on the range for the first incident)). Moreover, Kates testified that his hands and wrists were slammed in the food slot door twice. (*See* Kates Dep., 32:9-18). After his hand was slammed the first time, he yelled in pain and removed his hands from the slot. (*See id.*). Packer then asked him to stick his hands through the slot again, and once Kates complied, Packer again slammed the food slot door on his hands and wrists. (*See id.*). This evidence taken as a whole and viewed in the light most favorable to Kates raises sufficient factual issues to support submitting to a jury the issue of whether Defendants Eroh and/or Brandt had a reasonable opportunity to intervene and refused to do so. *See*, *e.g.*, *Sanders v. Cnty. of Camden*, No. 15-1129, 2017 WL 3332056, at *11 (D.N.J. Aug. 4, 2017).

Next, Defendants argue that the Magistrate Judge erred in recommending that Kates be permitted to proceed with his failure to intervene claim against Brandt relating to the "landing" incident. (*See* Doc. 256, 8-9). According to Defendants, Brandt may not even have been with Kates during this incident and instead may have been accompanying Kates' cellmate.[4] Defendants' objection on this point will be overruled. For one, evidence in the record indicates that Brandt was an "eyewitness[ ]" to the incident on the "landing." (*See* Doc. 242, Ex. 6, 2 (identifying Brandt as an

---

[4] Defendants' argument is based on portions of Kates' deposition testimony which were not submitted as part of the excerpted portions of the transcript they filed in support of their motion for summary judgment. (*Cf.* Doc. 229-1 (Kates Dep.) (omitting, *inter alia*, pages 26, 31, 35, and 36), *with* Doc. 256, 8 (citing Kates Dep. pages 31-36)).

eyewitness that stated that "[i]nmate Kates was placed on the floor with the least amount of force necessary to gain control."). Similarly, Brandt's report regarding this incident suggests that he was a witness to the use of force against Kates on the "landing." (*See* Doc. 229-1, Ex. B, 2 (least amount of force necessary was used to gain control of Kates)). [5] Likewise, the alleged assault, according to Kates, took place for 30 to 45 seconds and involved him being punched and kicked. (*See* Kates Dep., 49:2-4, 60:20-21). On the present record, an issue of fact exists as to whether Brandt failed to intervene in violation of Kates' constitutional rights with respect to the incident on the "landing." *See, e.g.*, *Kenney v. City of Pittsburgh*, No. 12-551, 2014 WL 789082, at *4 (W.D. Pa. Feb. 26, 2014); *Jenkins v. Hayman*, No. 09-4989, 2013 WL 3201326, at *14 (D.N.J. June 24, 2013) ("the Court similarly concludes that the record reveals issues of material fact as to whether Defendants observed unconstitutional conduct in the effort to subdue Plaintiff, had a realistic opportunity to intervene during the altercation, and failed to do so."). Thus, the Magistrate Judge did not err in recommending that Defendant Brandt be denied summary judgment on the failure to intervene claim related to this incident.[6]

Defendants also object to the Magistrate Judge's determination that Kates presented sufficient evidence to survive summary judgment on his excessive force claim against Packer for slamming his hands and wrists in the food slot. (*See* Doc. 256, 9-12). Defendants argue that because Kates did not see Packer slam the slot and

---

[5]     In *Smith*, the Third Circuit found that a fact finder could conclude that the defendant failed to intervene based on, *inter alia*, the defendant's misconduct report stating that "the minimum amount of force was used to place inmate Smith on the floor" which "appear[ed] to be based upon first-hand observations" made by the defendant. *See Smith*, 293 F.3d at 652.

[6]     Kates did not object to the Magistrate Judge's Recommendation that he failed to produce evidence that Eroh was personally involved in the "landing" incident. (*See* Doc. 253, *generally*). Finding this recommendation free of clear error, it will be adopted.

Kates acknowledged the possibility that someone else could have smashed his hands and wrists, summary judgment should be granted in Packer's favor because "Kates simply does not know who allegedly slammed his hands in the food slot." (Doc. 256, 9). I, like the Magistrate Judge, find the record contains sufficient evidence to allow a reasonable jury to conclude that Packer, rather than some other officer, slammed the door on Kates' hands and writs. As noted by Magistrate Judge Saporito, Kates testified that when he approached the door, Packer told him to submit to restrains, he saw Packer open the food slot, and Packer was holding restraints. (*See* Kates Dep., 33:1-3). Moreover, Kates testified that after his hands were slammed the first time, Packer instructed him to put his hands through the food slot for a second time at which time Kates' hands were again slammed and the restraints were applied. (*See id*. at 32:14-18). Given this testimony, a jury could reasonably infer that Packer was the officer that slammed Kates' hands and wrists in the food slot. Packer is not entitled to summary judgment on Kates' Eighth Amendment excessive force claim.

Lastly, Defendants challenge the Magistrate Judge's conclusion that summary judgment should be denied to Defendants Wise, Stroud, and Wagner on Kates' Eighth Amendment excessive force claim for the alleged assault on the "landing." (*See* Doc. 256, 12-14). As stated by Defendants, "[t]he Magistrate Judge error as to Defendants Officers Wise, Stroud, and Wagner is that he fails to recognize that there were three other officers in the area that Kates concedes were potential perpetrators to the alleged assault." (*Id*. at 12).

Defendants' objection on this basis will be overruled. Although Kates answered in the affirmative when asked if it was "possible that officers that were on the scene didn't punch you and kick you because you didn't see them," (Kates Dep., 49:5-8), Kates further testified:

> A: . . . Wise, Stroud, Wagner, they were present. They was the officers who took me to the ground according to their documents. *They was the only officers around*.

11

> Q: So taking you to the ground is in your definition is an assault?
>
> A: *They was the only officers around* and I was not assaulted by a ghost.
>
> Q: So Officer Wise took you to the ground. But did he do anything like kick or punch or hit you?
>
> A: It is my belief based on the documentation that *all* the officers who escorted me and had me and took me to the ground assaulted me. Yes.

(*Id*. at 52:17-53:8 (emphasis added)).

On this testimony, summary judgment cannot be granted in favor of Defendants Wise, Stroud, and Wagner. Kates was being escorted by three officers at the time he was taken down, they were the "only officers around," and all the officers who had him took him to the ground and attacked him. (*See id*.; *see also id*. at 42:21-43:1, 43:13-21). The facts of this case are thus like those in *Smith*, where the Third Circuit in vacating the entry of summary judgment in favor of multiple corrections officers stated:

> Defendants argue that we should nevertheless affirm the grant of summary judgment in favor of Officers Androshick, McCole, Zubris, and Jones because Smith concedes that he is not sure that they participated in the beating at all. However, the fact that Smith has acknowledged that he could not see those defendants during the beating neither negates their involvement nor their liability as a matter of law. Smith testified: "Officer Yurkiewicz, Zubris, Androshick, McCole, Jones, *all of them* was in back of me and they were pushing my head, right, into the cabinets in the wall, cabinets and walls. And then after that, I was knocked to the floor." App. at 166 (emphasis added). He further testified: ". . . *the full force of all the guards [was] behind me, they rammed my head into the cabinet and into the wall . . . No, I didn't say he [Yurkiewicz] did. I said all of them.*" *Id*. at 168 (emphasis added). That testimony is sufficient to create a genuine issue of material fact as to each of those defendants. *See Brooks*, 204 F.3d at 109.

*Smith*, 293 F.3d at 650 (emphasis in original). Therefore, as explained by the Magistrate Judge, Kates identified a group of officers, *i..e.*, Wise, Stroud, and Wanger, and produced evidence from which a jury could find that all three of these officers

used excessive force against him. (*See* Doc. 250, 25).[7] The Magistrate Judge's recommendation to deny summary judgment to Defendants Wise, Stroud, and Wagner on Kates' Eighth Amendment excessive force claim will be adopted.

## C. Kates' Objection.

Kates, as stated, raises only one limited objection to the Report and Recommendation. (*See* Doc. 253, *generally*). Specifically, Kates contends that the Magistrate Judge erred in finding that the record was devoid of evidence that Booth was present during the altercations at the cell door and/or the "landing." (*See id*.; *see also* Doc. 250, 14 (noting that "there is no evidence in the record before us to suggest that Lieutenant Booth was present for either the first incident at Kates' cell door or the second incident on the 'landing.'")). According to Kates, the range video footage, debriefing video, and a memorandum authored by Booth demonstrate that Booth was present and had the opportunity to prevent both incidents from taking place. (*See* Doc. 253, ¶¶ 5-7).

I agree with Kates that the Report and Recommendation incorrectly states that the record is absent of evidence that Booth was present during the incident at the cell door. Booth prepared a memorandum documenting, in pertinent part, that he responded to an incident at Kates' cell at 10:08 p.m. on May 24, 2012. (*See* Doc. 136-1, 21). Booth further states in that report that after staff introduced a chemical agent, "I then assisted in applying the hand restraints to . . . Kates." (*Id*.). This statement is confirmed by Booth in the debriefing video. The range video footage additionally shows Booth approach the cell. Minutes later, after Kates was removed from his cell,

---

[7] In their objections, Defendants assert that "at the summary judgment stage, Kates declares that there were at least six officers around when he was allegedly assaulted." (*See* Doc. 256, 13). That statement, though, is unaccompanied by a citation to the record. (*See id*.). That dispute, however, demonstrates at most a factual issue given Kates' unequivocal testimony that the only three officers around him when he was taken down, *i.e.*, Wise, Stroud, and Wagner, assaulted him. (*See* Kates Dep., 52:17-53:8).

13

Booth is shown on the range video walking next to Kates as he is controlled by other officers. Given this evidence and Kates' deposition testimony, as explained above, that his hands and wrists were allegedly slammed in the food slot door twice by Packer, a question of fact exists as to whether Booth, just like Defendants Eroh and Brandt, had a reasonable opportunity to intervene and refused to do so. *See*, *e.g.*, *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

I also find that the record contains sufficient evidence that Booth was present during the incident on the "landing" to allow Kates to survive summary judgment on this failure to intervene claim against Booth. Specifically, the evidence includes Kates' testimony that the altercation on the "landing" occurred in an area just outside of the view of the range camera. (*See* Kates Dep., 18:1-3; *see also* Doc. 242, Ex. "A", *generally*). Prior to this claimed incident, Booth is shown on the range footage walking next to Kates before passing under the camera and out of view. Viewing this evidence in the light most favorable to Kates as the non-moving party, a factual dispute exists as to whether Booth had a reasonable opportunity to intervene during the claimed use of excessive force on the "landing." *See, e.g., Abdullahi*, 423 F.3d at 774; *Anderson*, 17 F.3d at 557. Kates will therefore be permitted to proceed with his failure to intervene claims against Booth for both the cell door and "landing" incidents.

### III. Conclusion

For the above stated reasons, the Report and Recommendation is adopted in part

and rejected in part. Defendants' motion for summary judgment will be granted as to Plaintiff's claim against Defendant Eroh with respect to the failure to intervene claim regarding the use of force on the "landing." Defendants' motion for summary judgment will be denied in all other respects.

An appropriate order follows.

February 6, 2018                                        /s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                                     United States District Judge